| | | |
|---|---|---|
| MARGARET E. FINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Consolidated Case |
| v. | ) | No. 4:06-CV-171 CAS |
| | ) | |
| GOOD EARTH TOOLS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| THOMAS S. FINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Associated Case |
| v. | ) | No. 4:06-CV-878 CDP |
| | ) | |
| GOOD EARTH TOOLS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' motion for summary judgment as to all claims asserted by both plaintiffs. Plaintiff Margaret Finan also moves for partial summary judgment against defendant Good Earth Tools, Inc. as to Count II of her amended complaint. For the following reasons the Court will grant in part and deny in part defendants' motion for summary judgment. The Court will grant plaintiff Margaret Finan's motion for summary judgment only to the extent it finds there was a statutory violation.

### *Procedural Background*

On February 2, 2006, Thomas Finan filed a pro se complaint on his and his wife's behalf alleging defendants interfered with his wife's right to medical benefits because they terminated his

employment due to the high costs of Mrs. Finan's healthcare expenses. He also alleged defendants did not provide Mrs. Finan adequate notice of her rights to continued healthcare coverage under the Good Earth Tools medical plan, and that defendants failed to provide plan documents and other information as requested.

On June 6, 2006, plaintiff Thomas Finan, represented by counsel, filed a separate complaint against Good Earth Tools, Inc. and Ballast Tools, Inc. In his complaint, Mr. Finan alleges defendants violated Title I of the Americans with Disabilities Act of 1991, 42 U.S.C. § 12112(a) ("ADA") by failing to provide him reasonable accommodation for his disability and by terminating his employment on account of his disability. This case was filed as a separate cause of action and was given case number 4:06-CV-878 CDP and assigned to the Honorable Catherine D. Perry. Defendants moved to consolidate the two actions, arguing there were common questions of law and fact at issue. The motion was granted, and case number 4:06-CV-878 CDP was consolidated with 4:06-CV-171 CAS and assigned to the undersigned district judge.

Defendants move for summary judgment as to all claims against them. As to the claims brought by Mr. Finan, defendants argue: (1) Mr. Finan's claim of failure to accommodate is time-barred; (2) Mr. Finan is not and was not qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) that his dismissal was for legitimate, non-discriminatory reasons. Defendants also argue: (4) Ballast Tools was not Mr. Finan's employer and, therefore, should be dismissed; and (5) Mr. Finan made misrepresentations on his financial affidavit and, thus, his claims should be dismissed.[1] As to the claims brought by Margaret Finan, defendants

_____

[1] Mr. Finan, who was appointed next friend for his wife in case number 4:06-CV-17, filed a financial affidavit in support of a motion for leave to proceed in forma pauperis in which he represented that he and/or his wife had essentially no assets or income. After the affidavit was filed, the Court ordered

assert: (1) Mrs. Finan has not established a causal connection between her healthcare costs and the termination of her husband's employment; (2) she received adequate notice of her right to receive continued healthcare coverage through her husband; and (3) there is no evidence in the record of requests for plan documents or information that went unanswered. Defendants also move to dismiss Mrs. Finan's claims because Mr. Finan made misrepresentations on a financial affidavit filed on her behalf.

Plaintiff Margaret Finan moves for partial summary judgment only as to Count II of her amended complaint. She asserts there is undisputed evidence that defendant Good Earth Tools failed to provide her with a separate and accurate notice of her rights to continued healthcare coverage upon the termination of her husband's employment, which was a violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

---

each plaintiff to file a separate financial affidavit, noting it would not consider a joint financial affidavit. Shortly thereafter, Mr. Finan moved to withdraw as a plaintiff in case number 4:06-CV-171 CAS. He then filed an amended financial affidavit on his wife's behalf in which he noted he was financially separated from her, and that she received approximately $700 in Social Security disability benefits. No other assets or income were reported. He also indicated in the amended affidavit that his wife was in a nursing home and she was unable to communicate directly with the Court. The Court granted Mrs. Finan's motion to proceed in forma pauperis and appointed her counsel.

In its motion and memoranda in support, defendants vehemently urge the Court to dismiss all of the claims brought by both defendants because Mr. Finan made what they have characterized as willful misrepresentations on the original financial affidavit he filed. Mr. Finan filed the affidavit when he was proceeding pro se on his own and his wife's behalf, and the Court finds it is not altogether clear whether Mr. Finan intended the affidavit to represent their joint income and assets, or just the financial status of his wife. That said, it appears any mistakes or ambiguities were corrected, and defendants have not shown there are falsehoods contained in the amended financial affidavit. Therefore, in the interest of justice, the Court declines to dismiss the plaintiffs' causes of action on these grounds.

## *Summary Judgment Standard*

The standards applicable to summary judgment motions are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support

are not sufficient to defeat summary judgment." <u>Armour and Co., Inc. v. Inver Grove Heights</u>, 2 F.3d 276, 279 (8th Cir. 1993)

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. <u>Bassett v. City of Minneapolis</u>, 211 F.3d 1097, 1107 (8th Cir. 2000).

The Eighth Circuit has stated that summary judgment should seldom be used in cases alleging employment discrimination. <u>Kells v. Sinclair Buick - GMC Truck, Inc.</u>, 210 F.3d 827, 830 (8th Cir. 2000). Summary judgment is not appropriate in employment discrimination cases unless all the evidence points one way and is susceptible of no reasonable inference of discrimination. <u>Breeding</u>, 164 F.3d 1151, 1156 (8th Cir. 1999) (citation and internal quotation omitted). Summary judgment is appropriate, however, if the plaintiff has failed to present evidence sufficient to create a jury question as to an essential element of his claim. <u>Whitley v. Peer Review Sys., Inc.</u>, 221 F.3d 1053, 1055 (8th Cir. 2000) (citing <u>Chock v. Northwest Airlines, Inc.</u>, 113 F.3d 861, 865 (8th Cir. 1997)).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving these motions for summary judgment.

### *Facts*

Good Earth Tools, Inc. and Ballast Tools, Inc. are family companies owned, at least in part, by three brothers: Jonathan ("Jon") Williams, Edward Williams, and Keith ("Kip") Williams. The two companies, among other things, manufacture and sell tungsten carbide products for railroads, power plants, and other industrial companies.

It is undisputed that Thomas Finan was employed as an outside salesperson for Good Earth Tools starting in 1996. In his work as a salesperson, Mr. Finan traveled great distances by car to visit customers' work-sites. His territory spanned North America. While it is undisputed that defendants' customers operate in highly regulated industries, there are issues of fact as to what exactly Mr. Finan was required to do once he arrived at the customers' work-sites.

It is also disputed whether Mr. Finan was an employee of Ballast Tools in addition to being an employee of Good Earth Tools. From the record it appears the management and operations of Good Earth Tools and Ballast Tools often overlapped. At least at some point in time Mr. Finan sold products on behalf of Ballast Tools and was identified by the management of Ballast Tools as being an employee of Ballast Tools. He was also reimbursed for expenses by Ballast Tools.

For the most part, Mr. Finan was paid by and received benefits from Good Earth Tools, including medical benefits for himself and his wife. Mr. and Mrs. Finan were participants in the Good Earth Tools Employee Benefit Plan ("the Plan"). Good Earth Tools was and continues to be the plan administrator of the Plan, although it employs a third-party administrator, Mutual Assurance Administrators, Inc. ("MAA"), to handle the day to day operations of the plan, including COBRA compliance. The Plan is and was self-insured, but at all relevant times Good Earth Tools had a stop-gap insurance policy in place. Thus, Good Earth Tools is only responsible for out-of-pocket expenses up to the amount of the deductible, which has ranged from $15,000 to $25,000 per year per participant.

In April 2001, Mr. Finan's wife, Margaret Finan suffered a brain aneurysm that left her incapacitated. Mrs. Finan was hospitalized following this tragic event and has required varying degrees of skilled nursing care ever since. As a result, Mrs. Finan has incurred a significant amount

of medical expenses. In 2001, her medical expenses were $459,910.87; in 2002 they decreased to $68,712.60; in 2003 they decreased even further to $24,426.90; then in 2004, they increased to $40,070.54; in 2005 they increased again to $82,860.71; and in 2006 they were $9,115.00. As noted above, defendants were not responsible for all of these medical expenses. Good Earth Tools paid Mrs. Finan's medical expenses up to the amount of its deductible.

Prior to 2001, it appears Mr. Finan was a very successful salesperson. It would also appear that almost from the beginning of his employment Mr. Finan was a difficult employee. There were incidents documented prior to 2001 in which Mr. Finan was prohibited from speaking with certain co-workers. He was also removed from working on the accounts of certain customers due to personality conflicts, and was prohibited from entering the property of a particular customer. Despite these disciplinary issues, Mr. Finan remained a successful salesperson for the defendants.

Beginning in October 2001, Mr. Finan began experiencing episodes at work in which he would lose his train of thought and become non-communicative. In December 2001, Mr. Finan exhibited rather severe seizure-like symptoms during a meeting with customers. Following this event, Mr. Finan was placed on a paid leave of absence with medical benefits. He was prohibited from communicating on behalf of defendants. Whether this leave was voluntary or involuntary is disputed. Mr. Finan remained on leave for ten months, despite the fact that his physician had released him to return to work without restrictions in April 2002. Defendants refused to honor the medical release because Kip Williams witnessed Mr. Finan suffer another seizure-like episode shortly thereafter. In September 2002, defendants received notification from Mr. Finan's neurologist that Mr. Finan did not have any neurological issues that prevented him from working. In October 2002, defendants

finally allowed Mr. Finan to return to work. Mr. Finan contends he lost many of his accounts as a result of his long leave.

In February 2003, it appears Mr. Finan suffered two more seizure-like episodes at work. Following these events, Mr. Finan was placed on involuntary, unpaid medical leave. Defendants did, however, continue to provide Mr. Finan and his family with medical benefits. In March 2003, Mr. Finan was diagnosed by a neurologist as having epilepsy. In a letter dated March 24, 2003, Lee W. Tempel, M.D., stated Mr. Finan could return to work with seizure precautions, which included not driving a car or operating other dangerous machinery or equipment, and climbing ladders or being up on other high places. The restrictions did not include usual desk activities, or demonstrating or even inspecting machinery. Dr. Temple also stated once Mr. Finan was seizure-free for six months, the seizure precautions could be lifted.

In March 2003, Mr. Finan proposed as an accommodation that he allowed to work making outside sales calls with the help of a driver, who he would pay out of his own pocket. Defendants did not respond to this proposed accommodation until June 2003, at which time it was denied. It appears Mr. Finan also requested that he be allowed to do inside sales – that is, selling defendants' products and services without visiting customers' work-sites. It is not clear from the record when this request was made. In late June 2003, Mr. Finan was allowed to work from home and make sales calls via telephone and written correspondence. He was, however, restricted as to which products he was allowed to sell. After being seizure-free for six months, defendants allowed Mr. Finan to returned to outside sales in the beginning of October 2003. Mr. Finan maintains he lost many of his accounts as a result of being on involuntary leave and the restrictions defendants placed on him when

he was working from home.  It is undisputed Mr. Finan worked in his job as an outside salesperson without any accommodation from the beginning of October through the date of his discharge.

The following month, in November 2003, Mr. Finan was placed on a 60-day probation for poor sales and performance issues.  In letters and e-mails contained in the record before the Court, Kip Williams noted incidents with co-workers and customers that were similar as those Mr. Finan had experienced prior to 2001, before the onset of his epilepsy.

Sometime in the evening of Friday, January 30, 2004, Mr. Finan send a message to management, via facsimile, stating he would be taking the following Monday through Wednesday off for vacation.  Mr. Finan sent a second facsimile stating he would be off the remainder of the week. It is not clear from the record when Mr. Finan sent the second facsimile.  It is undisputed that at the time there was no policy in place regarding what notice is required prior to taking vacation. Furthermore, it appears from the record that defendants' salespersons, including Mr. Finan himself, had given short notices of vacation in the past without consequences.  There remains an issue of fact as to whether Mr. Finan had scheduled sales call with customers during the week he took vacation.

During that week Mr. Finan took vacation, Kip Williams attempted to contact him without success.  On February 9, 2004, following a number of unsuccessful attempts to reach Mr. Finan, Kip Williams terminated Mr. Finan's employment for poor sales, performance issues, and for taking an unscheduled vacation without adequate notification during a week when he had scheduled sales calls.

On or about February 20, 2004, MAA sent Mr. Finan a letter, on behalf of Good Earth Tools, notifying him of his right to continued healthcare coverage under COBRA.  It is undisputed that a separate COBRA notification was not sent to Mrs. Finan.  Mr. and Mrs. Finan, however, both elected

COBRA coverage, and it appears from the record that they maintained their medical coverage under the Plan until at least 2006.

Mr. Finan did apply for and receive disability benefits. In April 2003, he completed an application for disability benefits through a private insurer. On his application, Mr. Finan wrote he was totally disabled "at this time," and he indicated that he must follow seizure precautions, which included restrictions on his driving. The definition of disability under the policy was not provided to the Court. Mr. Finan also applied for and was awarded Social Security disability benefits in July 2006. The Court was not provided a copy of Mr. Finan's application for Social Security disability benefits.

On August 4, 2004, Mr. Finan filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR"), alleging defendants failed to accommodate his disability and unlawfully terminated his employment on account of his disability. The charge was amended on February 24, 2005.

*Discussion*

# I.     THOMAS FINAN'S CLAIMS AGAINST GOOD EARTH TOOL AND BALLAST.

## A.     It Remains Disputed Whether Ballast Tools Was Mr. Finan's Employer.

Defendants argue Ballast Tools should be dismissed from the case because the company was not Mr. Finan's employer. They contend Good Earth Tools was Mr. Finan's employer from 1996 through the date of his discharge. Mr. Finan counters that both Ballast Tools and Good Earth Tools were his employers.

As the Eighth Circuit has noted, there is "nothing in the law precludes the possibility that a person may have two or more employers for the same work." Hunt v. State of Mo., Dept. of Corrs.,

297 F.3d 735, 742 (8th Cir. 2002). In determining whether an entity is an employer in employment discrimination cases, the Eighth Circuit has used the common law agency definition of employer. While the "right to control the manner and means by which tasks are accomplished is a primary consideration," there are a number of other factors, which are "fact-intensive." Id. (citing to Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992)). These factors, which are non-exhaustive, include: "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Darden, 503 U.S. at 323.

In support of their argument that Mr. Finan was not an employee of Ballast Tools, defendants point to the "fact" that Mr. Finan has admitted he has done nothing "for or on behalf of" Ballast Tools since 2001. Defendants cite to two pages of Mr. Finan's deposition transcript in support of this so-called undisputed fact. The Court examined these two pages of the deposition transcript and found there was no mention of the duties Mr. Finan performed for Ballast Tools before or after 2001, in fact, there is no mention of the year 2001. Defendants also point to Kip Williams's affidavit to support the notion that Mr. Finan has not performed services for Ballast Tools since 2001. Mr. Williams states in his affidavit, "Mr. Finan sporadically sold parts for Ballast Tools, Inc., but he was not officially assigned to any Ballast Tools, Inc. accounts after 2001." The Court finds the statement

in the affidavit does not resolve the issue as to what Mr. Finan was doing "unofficially" for Ballast Tools, Inc. after 2001.

The only other evidence defendants point to in support of their argument is that Mr. Finan received "all compensation and benefits" from Good Earth Tools. Mr. Finan denies this assertion and counters that he was reimbursed for expenses by Ballast Tools. But even assuming Mr. Finan did receive all compensation and benefits from Good Earth Tools, this is but one factor to consider in determining whether an entity is an employer. Darden, 503 U.S. at 323. The fact Mr. Finan may have received pay exclusively from Good Tools is not determinative as to whether he was also an employee of Ballast Tools. After examining the record in this case, the Court finds there remains issues of material fact as to whether Mr. Finan was an employee of Ballast Tools.

### B.    Mr. Finan's Claim of Failure to Accommodate is Time-Barred.

Defendants move to dismiss all claims of defendants' alleged failure to accommodate Mr. Finan's disability because he failed to timely file a charge of discrimination concerning these claims. Defendants correctly point out that the ADA requires administrative exhaustion before filing a lawsuit. 42 U.S.C. § 2000e-5(e); Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998). To exhaust one's administrative remedies, an individual must timely file a charge of discrimination with the EEOC or a state enforcement agency setting forth the facts and nature of the charge. 42 U.S.C. § 2000e-5(e). Once an individual has received a right to sue notice from the EEOC or state agency, he or she has 90 days in which to file a lawsuit based on allegation that are "like or reasonably related" to the charge that was filed. Mohr v. Dustrol, Inc., 306 F.3d 636, 644-45 (8th Cir. 2002). "[If] the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2166 (2007). (citing to §

12

2000e-5(f)(1)). Claimants who dual file with the EEOC and a state agency, must file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5.

Mr. Finan filed a charge of discrimination on August 4, 2004, alleging defendants failed to accommodate his disability. The allegations underlying his failure to accommodate claim, however, occurred more than 300 days prior to August 4, 2004. Mr. Finan's request that he be allowed to use a driver occurred sometime in March 2003, and it was denied in June 2003. While it is not clear exactly when he asked that he be allowed to do inside sales, it appears from the record that it was made sometime prior to June 2003, and he was allowed to work from home from late June 2003 through September 2003. Mr. Finan has admitted that by the beginning of October 2003, he had been seizure-free for more than six months and had returned to work full-duty without any accommodation. Therefore, Mr. Finan's claim of failure to accommodate should be dismissed because he did not file a charge of discrimination regarding this claim within 300 days of the alleged discriminatory conduct. Henderson v. Ford Motor Co., 403 F.3d 1026, 1032 (8th Cir. 2005) (citing 42 U.S.C.2000e-5(e)); Stuart v. General Motors Corp., 217 F.3d 621, 626 (8th Cir. 2000).

Mr. Finan responds that his failure to accommodate claim should not be dismissed because it is related to other unlawful employment acts that do fall within the time period of his charge. He argues he has complained of "a series of separate acts, which together constitute the unlawful employment practice." Mr. Finan's response memorandum at 9. The Court does not agree. Mr. Finan's claims that defendants failed to accommodate his disability by allowing him to use a driver and/or do inside sales were separate and discrete acts of discrimination, which are actionable in of themselves. Stolzenburg v. Ford Motor Co., 143 F.3d 402, 405 (8th Cir.1998). The fact that defendants' denial of Mr. Finan's requests for accommodation may have had a continuing impact on

Mr. Finan does not convert the claim into a continuing violation. Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 486 (8th Cir.1997). That said, defendants' alleged failure to provide him with reasonable accommodation may be relevant to Mr. Finan's claim of discriminatory discharge based on his disability. Kells v. Sinclar Buick-GMC Truck, Inc., 210 F.3d 827, 834 (8th Cir. 2000). For the foregoing reasons, the Court will grant defendants' motion for summary judgment as to Count I of plaintiff Thomas Finan's complaint.

### C.    Defendants Are Not Entitled to Summary Judgment With Respect to Mr. Finan's Claim of Unlawful Discharge.

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997). In order to establish a prima facie case of discrimination based on a disability, a plaintiff must show that (1) he has a disability within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability. McPherson v. O'Reilly Auto., Inc., 491 F.3d 726, 730 (8th Cir. 2007) (citing to Conant v. City of Hibbing, 271 F.3d 782, 784 (8th Cir. 2001)). Defendants contend Mr. Finan is unable to meet the second and third prongs of his prima facie case.

### 1.    Issues of fact remain as to whether Thomas Finan was a qualified employee.

To conclude that a person is a qualified individual within the meaning of the ADA, the court must consider whether the person has "the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Weber v. Strippit, Inc., 186 F.3d 907, 916 (8th Cir. 1999). "[A] court cannot evaluate a plaintiff's qualifications in a

vacuum but must consider the specific essential functions of a particular job." Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 575 (8th Cir. 2000). "Although an ADA plaintiff retains the ultimate burden of proving that she is a qualified individual, an employer who disputes the plaintiff's claim that she can perform the essential functions of a job must put forth evidence establishing those functions." Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). An essential function may be established by evidence that includes:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 787 (8th Cir. 1998) (internal quotation marks omitted). A plaintiff need only make a facial showing that a reasonable accommodation that would enable her to perform her essential job functions is possible. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999). The burden then shifts to the employer to show that it is unable to accommodate the plaintiff. Id.; Heaser v. Toro Co., 247 F.3d 826, 831 (8th Cir. 2001).

Defendants argue Mr. Finan is not a qualified individual under the ADA because he could not perform the essential functions of his job with or without reasonable accommodation. Ignoring the fact that Mr. Finan worked without accommodation from the beginning of October 2003, they argue using a driver was not a reasonable accommodation, and even if it were, Mr. Finan could not perform his job duties once he was on-site. As the Court sees the record, it is undisputed Mr. Finan was seizure-free and working in his job, without accommodation, from October 2003 to the date of his

discharge in February 4, 2004.[2] This is in direct contradiction to defendant's argument that Mr. Finan could not perform his job with or without reasonable accommodation.

But even if Mr. Finan did at the time, or now does require accommodation to perform the essential functions of his job, the Court finds there remain issues of fact as to what exactly were the essential functions of Mr. Finan's job. The Court further finds there are issues of fact as to whether hiring a driver or doing inside sales (which is what Mr. Finan was essentially doing from June 2003 through September 2003) were reasonable request for accommodation. These issues of fact preclude the Court from finding Mr. Finan was unable perform the essential functions of his job with or without reasonable accommodation.[3]

Defendants also argue Mr. Finan admitted he is not a qualified individual under the ADA because he claimed he could no longer work at his job in his applications for private disability benefits and Social Security disability benefits. As to defendants' claim that Mr. Finan's representations to the Social Security Administration ("SSA") preclude him from now claiming he is disabled, defendants did not provide the Court with the necessary information to decide the issue because they did not attached a copy of Mr. Finan's application for Social Security benefits. Instead, they attached an

---

[2] The fact Mr. Finan may have been seizure-free and working without accommodation from October 2003 does not necessarily mean he was no longer disabled. Based on the complaint, memoranda in support and opposition to summary judgment and the exhibits attached thereto, it appears Mr. Finan is proceeding under a theory that he was "regarded as" having an impairment or even that he was discriminated against because he "had a record of" an impairment. 42 U.S.C. § 12102(2)(B) and (C), in addition to pursuing his disability claim under subsection (A) of 42 U.S.C. § 12102(2).

[3] As an affirmative defense, defendants also argue Mr. Finan cannot perform his job, because he posed a direct threat to himself and others. As there are issues of fact as to what were the essential function of Mr. Finan's job and whether Mr. Finan's requests for accommodation were reasonable (if indeed he needed them), there remains issues of fact as to whether he posed a direct threat to himself and others.

unauthenticated copy of the decision of the administrative law judge. As the statements Mr. Finan made to the SAA are not before the Court, the Court cannot conclude they are contrary to the allegations he makes in his ADA claim.[4] Defendants are not entitled to summary judgment under the theory that Mr. Finan contradicted himself in his applicable for Social Security benefits.

They are also not entitled to summary judgment based on his application for private disability insurance benefits. Defendants point to the fact that in April 2003, Mr. Finan reported to a private insurance company that he was disabled due to the fact that he was required to follow seizure precautions and that driving was "problematic." But as noted above, Mr. Finan was seizure-free for six months as of the beginning of October 2003, and he returned to work without accommodation. Furthermore, the fact Mr. Finan claims he is disabled for purposes of disability benefits does not contradict a claim under the ADA. The ADA protects persons who can perform their jobs with reasonable accommodation, while disability plans may or may not take into account the need for accommodation. Defendants did not provide the Court with the definition of disability under the plan or policy in question. And, as discussed above, there remains issues of fact as to the reasonableness of Mr. Finan's requests for accommodation. Consequently, issues of fact remain as to whether Mr.

---

[4] But even assuming Mr. Finan did claim he was unable to work in his application for Social Security benefits, this fact alone is not necessarily incompatible with an ADA claim. Cleveland v. Policy Mgmt Sys. Corp., 526 U.S. 795, 802 (1999) (holding claims for Social Security Disability Insurance (SSDI) benefits and for damages under the ADA do not inherently conflict to the point where courts should apply a special negative presumption that receipt of SSDI benefits estops the recipient from pursuing an ADA claim). "[A] plaintiff's sworn assertion in an application for disability benefits that [ ]he is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case-at least if [ ]he does not offer a sufficient explanation." Id. Here, as in Cleveland, Mr. Finan explained he applied for disability benefits and claimed he was unable to work because the SSA does not take into account accommodation, such as the need for a driver, when making disability determinations.

Finan was able to perform the essential functions of his job, with or without reasonable accommodation.

### 2. Issues of fact remain as to whether Thomas Finan's discharge occurred under circumstances giving rise to an inference of disability discrimination.

The third element of the prima facie case requires a showing that the person suffered an adverse employment action due to the disability. No one can claim Mr. Finan did not suffer an adverse employment action, as he was fired, but contrary to Mr. Finan's assertion, an adverse action by itself is not sufficient for a successful claim under the ADA. Instead, there must be a "specific link" between the discrimination and the adverse action to prove that the discrimination motivated the adverse action. Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 991 (8th Cir. 2007) (citing to Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005)). "In other words, the disability must be a motivating factor in the employer's decision for the adverse action." Id. In the absence of direct evidence, the plaintiff may survive summary judgment with evidence that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." Simpson, 425 F.3d at 542-43 (citing to Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 657 (8th Cir.2001)).

The Court finds there is no direct evidence that disability discrimination was a motivating factor in Mr. Finan's discharge. Based on the record before it, however, the Court finds there is evidence, some of which is disputed, such that a jury could reasonably find an inference of unlawful discrimination. For example, construing the evidence in a light most favorable to Mr. Finan, as the Court must do, there is evidence in record that defendants delayed in responding to and ultimately rejected Mr. Finan's requests for what might have been reasonable accommodation; that they placed Mr. Finan on involuntary leave on account of his medical condition, although he had been released to

return to work; that they restricted his access to customers and then placed unreasonable sales goals on him; and that they arbitrarily imposed a notice requirement for vacations, which was not a company policy at the time and not equally applied to others. In sum, there are genuine issues of fact as to whether defendants' actions were motivated by the existence of Mr. Finan's disability. Kells v. Sinclar Buick-GMC Truck, Inc., 210 F.3d 827, 834 (8th Cir. 2000) (finding evidence of reasonable accommodation denials, as well as other factors, was evidence of disability animus and warranted the reversal of summary judgment).

> **3.      Issues of fact remain regarding defendants' stated non-discriminatory reasons for Mr. Finan's termination.**

Once a plaintiff has established a prima facie case of disability discrimination, as Mr. Finan has done here, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. Rehrs v. Iams Co., 486 F.3d 353, 357 (8th Cir. 2007) (citing to Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044-45 (8th Cir. 2005). Defendants maintain Mr. Finan's claim for unlawful termination fails because there were legitimate nondiscriminatory reasons for his discharge. After careful review of the affidavits, deposition excerpts, and exhibits attached to the memoranda in support and opposition, the Court finds there remains numerous issues of disputed facts and credibility as to defendants' stated reasons for Mr. Finan's termination. For all the reasons discussed above, the Court will deny defendants' motion for summary judgment as to Count II of Mr. Finan's complaint.

# I.    MARGARET FINAN'S CLAIMS AGAINST GOOD EARTH TOOLS AND BALLAST TOOLS.

Margaret Finan brings a three-count complaint against defendants alleging: (1) unlawful interference with her medical benefits pursuant to §510 of the Employee Retirement Security Income Act ("ERISA"); (2) failure to provide proper notice under COBRA, and (3) failure to respond to requests for information in violation of ERISA. In her response to defendants' motion for summary judgment, Mrs. Finan acknowledged Ballast Tools did not owe her a duty under COBRA, and she dismissed her claims against this defendant as to Counts II and III of her amended complaint.

## A.    Plaintiff Margaret Finan Failed to Establish a Prima Facie Case of ERISA Retaliation.

Mrs. Finan alleges defendants set a plan in motion to terminate her husband's employment because her medical expenses were costing the company too much money. In essence, she is alleging defendants' terminated Mr. Finan's employment to remove her from the Good Earth Tool's medical plan.

Under ERISA § 510, an employer may not discharge an employee for the purpose of interfering with the attainment of any right to which that employee or his or her dependant may become entitled under a plan. 29 U.S.C. § 1140; Langlie v. Onan Corp., 192 F.3d 1137, 1141 (8th Cir. 1999); Mathews v. Trilogy Communs., Inc., 143 F.3d 1160, 1166 (8th Cir. 1998); Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 456 (8th Cir. 1995). Claims under ERISA § 510 are analyzed using the familiar McDonnell Douglas three-stage burden-shifting framework. Montgomery v. John Deere & Co., 169 F.3d 556, 561 (8th Cir. 1999); Mathews, 143 F.3d at 1166; Kinkead, 49 F.3d at 456; Rath v. Selection Research, Inc., 978 F.2d 1087, 1089 (8th Cir. 1992). A plaintiff suing under § 510 of ERISA must show that (1) he or she was entitled to benefits under a plan; (2) an

adverse employment action was taken that prevented him or her from obtaining benefits under the plan, and (3) a causal connection existed between the two. Montgomery, 169 F.3d at 561. "The requisite causal connection may be established either through direct evidence of retaliation or circumstantial evidence such as proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." Mathews, 143 F.3d at 1166 (quoting Kinkead, 49 F.3d at 456; Rath, 978 F.2d 1090). If the plaintiff is able to establish a prima facie case under ERISA § 510, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. If the employer meets its burden, then the claimant must prove that the proffered reason is pretextual. Id.

Here, the Court finds Mrs. Finan has not met her prima facie case. There is no dispute that Mrs. Finan has established the first two elements of her prima facie case in that she was a beneficiary covered by the Plan, and an adverse action was taken against her husband that ultimately led to her ineligibility under the Plan. It is the third element, causal connection, Mrs. Finan has failed to establish.

Mrs. Finan claims the costs of her medical expenses, the temporal proximity of the events, and statements from Kip Williams establish the necessary causal connection in this case. The Court does not agree. In regard to the costs of her healthcare, Mrs. Finan has submitted evidence that her healthcare costs totaled $685,096.62 from 2001 through 2006.[5] Mrs. Finan, however, has not explained who was responsible for these medical costs. Defendants respond to Mrs. Finan's claim that her medical expenses motivated defendants to termination her husband's employment by providing

---

[5] Mrs. Finan has also pointed to what appears to be a newsletter article from 2004 in which Jon Williams cited the raising costs of healthcare as the reason Good Earth Tools was considering implementing employee contributions to the medical plan, which it eventually did. Mrs. Finan has presented no evidence, however, that these rising costs were related to her medical expenses, as opposed to the general, nationwide rising costs of healthcare.

evidence that Good Earth Tools did not in fact pay all of Mrs. Finan's healthcare costs. According to an undisputed affidavit, Good Earth Tools is self-insured, but at all relevant times, it has had a stop-loss insurance policy in place. Therefore, Good Earth Tools only paid out-of-pocket healthcare expenses for Mrs. Finan up to the amount of its deductible, which ranged from $15,000 to $25,000 per year.

Furthermore, during the relevant time period, Mrs. Finan's medical costs actually decreased. In fact, aside from 2006, the last year she participated in the plan, Mrs. Finan's medical costs were at their lowest the year preceding her husband's termination. Defendants also presented evidence that between 2001 through 2005, three to six individuals each year exceeded the deductible amount. And, of the employees associated with these individuals, only Mr. Finan and one other person were involuntarily terminated. Although Mrs. Finan's medical situation did cost Good Earth Tools money in terms of her healthcare expenses, this fact alone does not raise an inference of discriminatory intent. Chmiel v. Opto Tech., Inc., 2004 WL 1611610, *14 (N.D. Ill. Jul. 19, 2004) (citing to Salus v. GTE Directories Serv. Corp., 104 F.3d 131, 135 (7th Cir.1997)).

In regard to the timing of the events, Mrs. Finan suffered an aneurysm in April 2001. Nearly three years later, in February 2004, Mr. Finan was terminated from his employment. Not only was there a long passage of time between the event that escalated her medical costs and her husband's discharge, but there were many intervening events, including the onset of Mr. Finan's epilepsy. See Montgomery, 169 F.3d at 561(finding timing did not raise an inference of retaliatory motive where plaintiff's discharge occurred over a year after his refusal to accept early retirement); Rath, 978 F.2d at 1089 (stating that it was doubtful that plaintiff had established a prima facie case when only evidence of causal connection was that his termination came about six months after his employer

reprimanded him for questioning proposed changes in employee stock ownership plans); cf. Eckelkamp v. Beste, 315 F.3d 863, 871 (8th Cir. 2002) (plaintiff established a prima facie case by pointing to the short time, approximately a month, between his discharge and his protest of management practices concerning the plan).

Finally, the Court finds the record does not support Mrs. Finan's claim the Kip Williams commented directly on the costs of her medical care in June 2003. The Court has careful examined the deposition testimony of Mr. Finan cited by Mrs. Finan in support of her claim. Even construing Mr. Finan's deposition testimony in a light most favorable to plaintiff, as the Court must do, the fact that Kip Williams may have inquired as to which care facility Mrs. Finan was moving, and whether that facility was an acute care facility does not amount to a statement that Mrs. Finan's healthcare costs were too high and costing the company too much money. In sum, the Court concludes Mrs. Finan has not met her burden and presented evidence that raises an inference that the termination of her husband's employment was causally related to her healthcare costs.

**B.      Margaret Finan Has Established A COBRA Violation.**

COBRA requires administrators of covered group health plans to notify each qualifying beneficiary that they have the option of continuing their benefits upon the occurrence of a qualifying event such as termination of employment. See 29 U.S.C. §§ 1161(a), 1163, 1166(a)(4); Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 829 (8th Cir. 2006). "The notice must adequately inform the beneficiary of the COBRA coverage he [or she] is entitled to receive . . . and the money owed to maintain this coverage." Geissal ex rel. Estate of Geissal v. Moore Med. Corp., 338 F.3d 926, 934 (8th Cir. 2003) (citing to Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136, 1140 (8th Cir. 1992)). A plan administrator that fails to meet this notice requirement "may in the

court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure . . . and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1); Delcastillo v. Odyssey Res. Mgmt., Inc., 431 F.3d 1124, 1129 (8th Cir. 2005).

Under Eighth Circuit law, Good Earth Tools bears the burden of proving that it gave Mrs. Finan sufficient COBRA notice. Chesnut v. Montgomery, 307 F.3d 698, 702 (8th Cir. 2002) (citing to Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 727-29 (8th Cir.1995) (overruled on other grounds)). The notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage. Id. (citing to McDowell v. Krawchison, 125 F.2d 954, 958 (6th Cir. 1997)). Whether the notice was sufficient is dependent on the circumstances of the qualifying event. Id. (finding employees, spouses, and dependent children may have differing needs for information depending on the qualifying event). Furthermore, the statute does not require proof of actual notice, so long as the administrator has sent the notice by means reasonably calculated to reach the recipient. Crotty, 455 F.3d at 830.

The courts are divided on the issue of what constitutes sufficient notification to an employee's spouse upon the employee's termination. Compare McDowell, 125 F.3d at960 ("we do not interpret the statute's notice provisions as treating the covered employee and his or her spouse as a unit for notice purposes, such that the plan administrator is absolved of its duty to notify the spouse"); Mlsna v. Unitel Commc'ns, Inc., 825 F.Supp. 862, 865 n. 2 (N.D. Ill. 1993) (COBRA requires separate notices to employee and spouse) (reversed, in part, on other grounds); and Van Hoove v. Mid-America Bldg. Maint., Inc., 841 F.Supp. 1523, 1535 (D. Kan. 1993) (notification sent to former employee that did not tell former employee to instruct his wife of her COBRA rights was insufficient);

with Conery v. Bath Assocs., 803 F.Supp. 1388, 1399 (N.D. Ind. 1992) (notice to covered employee constitutes sufficient notice to all other qualified beneficiaries with the same last known address); and Dehner v. Kansas City S. Indus., Inc., 713 F.Supp. 1397, 1399 (D. Kan. 1989) (sufficient notice to spouse where employer included spouse's notification in envelope with employee's notification and instructed employee to give information to spouse). In addressing a case where only the employee received oral COBRA notification, the Eighth Circuit has held that spouses, as qualified beneficiaries, are entitled to separate notice of their right to elect continued healthcare coverage. Chesnut, 307 F.3d at 703 (citing to 29 U.S.C. § 1167(3)(A)(I)).

In support of her COBRA claim, Mrs. Finan points to the undisputed fact that Good Earth Tools did not send her a separate notice of her COBRA rights.[6] MAA, as the third party administrator of the Plan, sent a letter addressed to Mr. Finan dated February 10, 2004, regarding what he needed to do to continue his healthcare coverage for himself and his covered dependants. The letter was not addressed to Mr. and Mrs. Finan or to Mr. Finan as Mrs. Finan's legal guardian. In fact, there is no evidence in the record that defendants inquired as to the identity of Mrs. Finan's legal representative. Furthermore, MAA did not include a separate insert addressed to Mrs. Finan regarding her rights under COBRA, and there were no instructions to Mr. Finan to inform Mrs. Finan (or her guardian) of her rights. Under these circumstances, the Court finds Good Earth Tools, through its third part

---

[6] As an alternative theory under COBRA, Mrs. Finan alleges Good Earth Tools failed to notify her (or her husband) when the Plan switched from a two-tier plan offering benefits to (1) employees, and (2) employees and families, to a four-tier plan offering benefits to (1) employees, (2) employees and spouses, (3) employees and children, (4) employees and families. Setting aside the fact that there is conflicting evidence in the record as to when this amendment to the Plan took place, the Court finds Mrs. Finan has not established that Good Earth Tools had a duty under COBRA to notify her of any such change. Furthermore, there is no evidence in the record that Mrs. Finan was harmed by Good Earth Tools alleged failure to inform her of the adoption of the four-tier coverage options.

administrator, did not fully execute its duties under COBRA and provide Mrs. Finan sufficient notice.

Despite defendants' contentions to the contrary, the absence of actual injury does not preclude the award of a statutory penalty under 29 U.S.C. § 1132(c)(1). "The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA, . . .and to punish noncompliance. Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006) (citing to Chesnut, 307 F.3d at 704; Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir.1999)). In exercising its discretion to impose statutory damages, a court primarily should consider "the prejudice to the plaintiff and the nature of the plan administrator's conduct." Kerr, 184 F.3d at 948.

That said, statutory penalties are not warranted in this case. Plaintiff has presented insufficient evidence to support an award of penalties. In regard to penalties, Mrs. Finan simply states in her memorandum that she is "entitled to penalties up to $100.00 a day" without indicating the total amount she is requesting, the reasons justifying an award of penalties, or even the harm she has suffered. Plaintiff has presented neither evidence of bad faith on the part of Good Earth nor evidence that she suffered harm as a result of Good Earth's failure to send her a separate notice.

The fact of the matter is that Mrs. Finan's husband received notice of her rights under COBRA, and he elected to take continued healthcare coverage under the Plan for himself and on behalf of Mrs. Finan. There is no evidence that he would have done otherwise had Mrs. Finan received separate notice. The fact that Good Earth Tools' third party administrator failed to send Mrs. Finan separate COBRA notice, when notice was sent to her husband and caretaker, does not justify the imposition of penalties under the statute against Good Earth Tools. Chesnut, 307 F.3d at 704. While the Court will grant Mrs. Finan's motion for summary judgment as to Count II of her amended complaint

because there was a statutory violation of COBRA, the Court, in its discretion, declines to award damages or penalties.

**B.      Margaret Finan Has Not Established Good Earth Tools Failed To Provide Requested Plan Documents.**

In her amended complaint, Mrs. Finan makes general allegations that defendant Good Earth Tools repeatedly denied Mr. Finan's requests, which were made on her behalf, for plan information, including plan manuals, summary plan descriptions, and election options. Mrs. Finan, however, has failed to identify specific instances where Mr. Finan's requests for information went unanswered. She has pointed to no set of facts setting forth when a request for information was made, to whom it was addressed, and what information was requested. Therefore, the Court finds Mrs. Finan has failed to state a claim under ERISA for failure to provide requested Plan documents or information, and defendants are entitled to summary judgment as to Count III of plaintiff Margaret Finan's amended complaint.[7]

### *Conclusion*

For the foregoing reasons, the Court concludes plaintiff Thomas Finan failed to timely exhaust his administrative remedies as to his claim of failure to accommodate, and therefore, defendants are entitled to summary judgment as to Count I of his complaint. The Court further finds there are outstanding issues of material fact that preclude the entry of summary judgment as to Count II of Mr. Finan's complaint. As to the claims brought by Mrs. Finan, the Court finds she has not established defendants unlawfully interfered with her rights under ERISA or that Good Earth Tools, as plan

---

[7] Because Mrs. Finan has failed to set forth any facts establishing when and to whom requests for plan documents or information were made, the Court need not decide the issue of whether plaintiff is entitled to relief for breach of fiduciary duties separate and apart from a claim under 29 U.S.C. § 1132(c)(1), or whether she was required to exhaust administrative remedies under the Plan.

administer, failed to provide plan information or documents as requested. Defendants' motion for summary judgment should be granted as to all claims in Counts I and III of Mrs. Finan's amended complaint. Mrs. Finan is entitled to summary judgment as to Count II of her amended complaint, in that Good Earth Tools failed to give her separate notice of her rights under COBRA. The Court, however, declines to award damages or statutory penalties against Good Earth Tools.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Good Earth Tools, Inc. and Ballast Tools Inc.'s motion for summary judgment is **GRANTED** in part and **DENIED** in part. Defendants are entitled to summary judgment as to Count I of plaintiff Thomas Finan's complaint and as to Counts I and III of plaintiff Margaret Finan's amended complaint. The motion is denied in all other respects. [Doc. 80]

**IT IS FURTHER ORDERED** that plaintiff Margaret Finan's partial motion for summary judgment is **GRANTED** to the extent the Court finds Good Earth Tools, Inc. failed to comply with the notice requirements of COBRA. The Court, however, declines to award plaintiff Margaret Finan damages or statutory penalties. [Doc. 82]

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___15th___ day of October 2007